UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| PHUONG VAN TRUONG,<br>*Petitioner*<br><br>v.<br><br>PAMELA BONDI, KRISTI NOEM, TODD M. LYONS, SYLVESTER M. ORTEGA, BOBBY THOMPSON,<br>*Respondents* | §<br>§<br>§<br>§  Case No.  SA-25-CA-01947-XR<br>§<br>§<br>§<br>§ |

### ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

On this date, the Court considered Phuong Van Truong's *pro se* Petition for a Writ of Habeas Corpus (ECF No. 1) and the Government's response (ECF No. 7). After careful consideration, the Petition (ECF No. 1) is **GRANTED**.

### BACKGROUND

**I. Petitioner's Post-Removal-Order Detention**

Petitioner is a citizen of Vietnam currently detained at the South Texas ICE Processing Center in Pearsall, Texas. ECF No. 1 at 1. He first arrived in the United States as a refugee in 1982. ECF No 1 at 10.

On October 30, 2012, an immigration judge entered a final order of removal directing Petitioner's deportation to Vietnam. ECF No. 7 at 2.  Immigrations and Customs Enforcement ("ICE") requested travel documents from the government of Vietnam, but Vietnam denied ICE's request. *Id*. Presumably recognizing that Petitioner's removal to Vietnam was not reasonably foreseeable, ICE released Petitioner from detention on December 10, 2012. *Id.* This period of post-

1

removal-order detention lasted 41 days.[1] There were no changes to Petitioner's immigration case for the next 13 years.

On September 18, 2025, ICE re-detained Petitioner. ECF No. 7 at 2. Respondents have not noted any changes in circumstances supporting the decision to re-detain petitioner. Instead, they simply state that it was necessary to "effect removal." ECF No. 7 at 2. Petitioner remains in detention. This second period of post-removal-order detention has lasted 146 days. As such, the combined period of Petitioner's post-removal-detention is now 187 days.

**II. Arguments**

Petitioner filed this petition seeking to challenge the legality of his detention. ECF No. 1 at 7. He makes two arguments:

(1) ICE has illegally detained him "beyond the removal period authorized by 8 U.S.C. § 1231(a)(6)" because his post-removal-order detention "exceeds a period reasonably necessary to secure removal," *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); and

(2) "ICE officials detained [him] without providing [him] with notice or explanation for [his] detention as required by" 8 C.F.R. § 241.13.

ECF No. 1 at 7–8. Respondents instead contend that:

(1) ICE is lawfully detaining Petitioner under Section 1231(a)(6) because Petitioner "has not shown that he has been in post-order custody for six months . . . and he has not shown any good reason to believe that removal is unlikely," ECF No. 7 at 5;

(2) Petitioner "has a final order of removal, which . . . mandates his detention under 8 U.S.C. § 1231(a), and "[e]ven if the Court were to find a procedural due process

---

[1] While the record is unclear, the Court assumes that this initial period of detention began following the immigration judge's final order of removal on October 30, 2012. *See* 8 U.S.C. § 1231(a) (requiring that the Attorney General detain an Alien after a removal order becomes administratively final).

violation" stemming from ICE's failure to follow its own regulations, "the remedy . . . is substitute process, not release," *id.* at 6–7.

The Court evaluates these arguments considering its "legal responsibility to review the lawfulness of an alien's continued detention." *Zadvydas*, 533 U.S. at 700.

## LEGAL STANDARD

### I. Writ of Habeas Corpus

A habeas petitioner must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). The petitioner "bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Id.* (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). "A court considering a habeas petition must 'determine the facts, and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

### II. *Pro Se* Construction

The Court notes that Plaintiff proceeds *pro se* in this case. When reviewing a *pro se* plaintiff's complaint, the Court must construe the allegations liberally, holding the *pro se* to less stringent pleading standards than those applicable to lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). However, a party's *pro se* status does not offer him "an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

Likewise, while courts "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel, *pro se* parties must still brief the issues and reasonably comply with [federal procedural rules]." *U.S. Bank Nat'l Ass'n v. Johnson*, No. 1:15-CV-788-RP, 2017 WL 598499, at *2 (W.D. Tex. Feb. 14, 2017) (quoting *Grant v. Cuellar*, 59 F.3d 524, 524 (5th Cir. 1995).

## DISCUSSION

Petitioner challenges his prolonged post-removal-order detention and ICE's failure to comply with its own regulations in re-detaining him.

### I. 8 U.S.C. § 1231(a)(6) Does Not Authorize Petitioner's Continued Detention

Petitioner first argues that he "has been detained by ICE beyond the removal period authorized by [8] U.S.C. § 1231(a)(6) [because] ICE is not likely to remove [him] in the near future." ECF No. 1 at 7.

#### A. *Zadvydas* Restricts Post-Removal-Order Detention to a Period Reasonably Necessary to Secure Removal

"[T]he Government ordinarily secures [a noncitizen]'s removal during" the ninety days following a final order for the person to be removed. *Zadvydas*, 533 U.S. at 682; 8 U.S.C. § 1231(a)(1). During that ninety-day "removal period," the person subject to removal is typically detained. *Zadvydas*, 533 U.S. at 682. Beyond that point, the Government may in some situations continue detaining them for as long as is "reasonably necessary" to secure their removal. *Id.*; 8 U.S.C. § 1231(a)(6). But, under *Zadvydas*, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." 533 U.S. at 699.

*Zadvydas* recognized a "presumptively" reasonable period of detention. 533 U.S. at 699; *Villanueva*, 2025 WL 2774610, at *10 ("[T]he presumption of constitutionality during that six-month period is rebuttable."); *Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *5–6

4

(D. Md. Sept. 8, 2025) (collecting cases). It did so merely to "guide" lower court determinations of whether removal is reasonably foreseeable. *Munoz-Saucedo v. Pittman*, No. CV 25-2258 (CPO), 2025 WL 1750346, at *6 (D.N.J. June 24, 2025) (quoting *Zadvydas*, 533 at 700–01). *Zadvydas* unequivocally held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." 533 U.S. at 699–700.

A detained person who brings a *Zadvydas* claim *before* the presumptively reasonable six-month period must *prove* "that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*; *Medina*, 2025 WL 2306274, at *6 (quoting *Munoz-Saucedo*, 2025 WL 1750346, at *6). To make out a *Zadvydas* claim *after* the six months have run, a detained noncitizen need only "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. If he does so, "the Government must respond with evidence sufficient to rebut that showing." *Id.* And "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

**B. Petitioner Has Been Detained For More Than Six Months After His Removal Order**

The parties first disagree whether Petitioner has been detained for six months for the purpose of *Zadvydas*'s "presumptively reasonable" period. Petitioner believes that he has been because his total post-removal-order detention exceeds six months when you combine his current detention with his 2012 detention. ECF No. 1 at 7 (claiming that Petitioner has been detained "present combined more than 6 months"). Respondents counter that Petitioner's *current* period of detention (beginning September 2025) is less than six months, so his detention is presumptively reasonable under *Zadvydas*. ECF No. 7 at 3 ("Petitioner's reliance on *Zadvydas* is premature because he has been detained less than six months.").

Contrary to Respondents' argument, *Zadvydas* does not set the presumption at six *continuous* months. Reading "continuous" into *Zadvydas* would undermine its holding. It would

mean that "aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment" as long as they are released for a day every six months. *See Zadvydas*, 533 U.S. at 695; *Chen v. Holder*, No. CV 6:14-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015) ("Surely, under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government, as was done in this case, while technically not in violation of the presumptively reasonable jurisprudential six month removal period, in essence results in an indefinite period of detention, albeit executed in successive six month intervals.").

Language in binding precedent reinforces that the period need not be continuous. *See Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (noting that *Zadvydas* "created a '6–month presumption' of the validity of detention under § 1231"). So the Court joins with others who have addressed this question and rejected the Government's reading. *See Asfestani v. Current or Acting Field Off.*, No. 1:25-CV-1562-SCR, 2025 WL 3677321, at *4 (E.D. Cal. Dec. 18, 2025) (collecting cases).

Petitioner was detained for at least 41 days in 2012. ECF No. 7 at 6. He has now been detained since September for 146 days. *Id*. This is a total of 187 days, which exceeds six months, so his detention is not presumptively reasonable.

### C. Removal Is Not Reasonably Foreseeable

Without any presumption, the Court "must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699. The period is unreasonable if (1) there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" and (2) the Government fails to "respond with evidence sufficient to rebut that showing." *Id*. at 701. The burden of the first element is on Petitioner, and he does not satisfy it with "conclusory statements suggesting that he will not be immediately removed." *Andrade*, 459 F.3d at 543–44.

6

**1. There Is a Good Reason to Doubt That Removal Is Reasonably Foreseeable**

Petitioner includes more than conclusory statements here. He notes that he was originally ordered removed in 2012, detained, and released on an order of supervision "because [his] removal was not reasonably foreseeable." ECF No. 1 at 10. As Respondents admit, "ICE released Petitioner on an order of supervision" after "ERO requested a travel document from Vietnam [and] ERO's request was denied." ECF No. 7 at 2. The fact that Petitioner was previously released from detention because his removal was not reasonably foreseeable is "good reason to believe" that removal is not reasonably foreseeable.

The Court also notes that a good reason may exist given Vietnam's historical refusal to accept deportations. *See, e.g.*, *Tran v. Mukasey*, 515 F.3d 478, 480 (5th Cir. 2008) (noting that the government of Vietnam would not repatriate the petitioner); *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 147 (D. Mass. 2025) ("It was not until 2008 that the United States and Vietnam entered into a repatriation agreement"). Indeed, Vietnam refused to accept Petitioner here. *See* ECF No. 7-1 at 1 (noting that "Vietnam denied the issuance of travel documents for [P]etitioner, as the petitioner was found to be not subject to an agreement between the United States and Vietnam regarding acceptance of returning Vietnamese citizens that was signed on January 22, 2008").

**2. The Government Fails to Show a Significant Likelihood of Removal in the Reasonably Foreseeable Future**

Given a good reason to believe that removal is not reasonably foreseeable, the remaining question is whether the Government has evidence to the contrary. They assert the following to support the conclusion that removal is reasonably foreseeable:

(1) "On December 5, 2025, a Notice of Review and Form I-229(a)- Warning for Failure to Depart were served on the Petitioner";

7

(2) On the same date, "Petitioner also completed travel documents to the best of his ability";

(3) ICE "served a Notice of Interview on Petitioner and took a passport photo";

(4) "ICE is working towards obtaining [Petitioner's] Vietnamese travel documents"; and

(5) "Publicly available statistics show that . . . 58 Vietnamese nationals were successfully removed in FY2024, showing an increase in successful removals in recent years."

ECF No. 7 at 2; ECF No. 7-1 at 2. Based on this evidence, supported only by a single affidavit from an ICE officer, Respondents contend that "[r]emoval to Vietnam, therefore, is significantly likely to occur in the reasonably foreseeable future." ECF No. 7-1 at 2.

However, Respondent's evidence does not address the reason why Petitioner was not removed when detained in 2012: Vietnam refused to issue him travel documents. In other words, Respondents point to no change in circumstances indicating that Vietnam will accept Petitioner when it would not previously. If Petitioner's removal was not foreseeable in 2012 because Vietnam refused to accept him, and there is no evidence that they will do so now, the Court must conclude that the likelihood of Petitioner's removal remains slim. *See Bah v. Cangemi*, 489 F. Supp. 2d 905, 923 (D. Minn. 2007) (granting a petition based on *Zadvydas* when the Government was unable to secure travel documents from Liberia). As such, there is no significant likelihood that Petitioner's removal is reasonably foreseeable.

"[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699–700. Petitioner's detention is unlawful and he must be released.

**II. Petitioner's Re-Detention Violated 8 C.F.R. § 241.13**

Petitioner next contends that his detention violates due process because ICE did not follow its own regulation to re-detain him. He specifically states that his "detention is in violation of [8] C.F.R. § 241.13(i)(2)." ECF No. 1 at 8. That regulation states in part:

> (2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.

8 C.F.R. § 241.13(i)(2).

Respondents note that "Petitioner argues that a violation of the [order-of-supervised-release] regulation[] means Petitioner must be released." ECF No. 7 at 7. But they do not contend that ICE followed that regulation by making the determination that it requires. Nor do Respondents claim that there were "changed circumstances" to support that determination.[2]

The Court must therefore conclude that ICE did not follow its own regulation when re-detaining Petitioner. His detention implicates his fundamental right to be free from unlawful imprisonment. *See Zadvydas*, 533 U.S. at 678 ("The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]" any "person . . . of . . . liberty . . . without due process of law.' Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."). ICE's failure to follow its regulation has therefore resulted in substantial prejudice to Petitioner. *See Patel v. U.S. I.N.S.*, 803 F.2d 804, 807 (5th Cir. 1986) ("[T]o sustain a due process challenge to a deportation proceeding, an alien must show substantial prejudice."). His detention thus violates his right to due process. *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152–53 (D. Mass. 2025) ("Based on ICE's violations

---

[2] Respondents only argue that "the remedy for any procedural due process violation is substitute process, not release." Considering that Petitioner is separately entitled to release because his detention exceeds the period allowed under 8 U.S.C. § 1231(a)(6), Respondents' argument is moot.

of its own regulations, I conclude that Mr. Nguyen's detention is unlawful and that his release is appropriate.").

## CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED.** It is **ORDERED** that:

1. Respondents shall **RELEASE** Petitioner (A# 025-364-733) from custody to a public place by **no later than February 13, 2026**;

2. ICE shall only re-detain Petitioner under 8 U.S.C. § 1231 after making the determination required by 8 C.F.R. § 241.31(i)(2);

3. Respondents shall **FILE** a Status Report **no later than February 16, 2026**, confirming that Petitioner has been released;

4. Petitioner's Motion to Appoint Counsel (ECF No. 2) is **DENIED AS MOOT.**

A final judgment will issue separately.

It is so **ORDERED**.

**SIGNED** this 11th day of February, 2026.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE